UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY DILLINGHAM,

  Plaintiff,

v.

EVA SCRUGGS, et al.,

  Defendants.

Case No. 16-cv-03267-YGR (PR)

**ORDER GRANTING DEFENDANTS'
CROSS-MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT; AND DENYING OTHER
PENDING MOTIONS AS MOOT**

## I.    INTRODUCTION

Plaintiff Jerry Dillingham, currently incarcerated at California State Prison - Los Angeles County, brings the instant *pro se* action, pursuant to 42 U.S.C. § 1983, stemming from alleged constitutional violations that took place while he was incarcerated at Salinas Valley State Prison ("SVSP") from 2011 through 2013.  Plaintiff seeks monetary damages based on alleged injuries caused by the following Defendants: SVSP Bakery Supervisors Eva Scruggs and J. Brunscher; SVSP Lieutenant R. Mojica, SVSP Warden A. Hedgpeth; California Department of Corrections and Rehabilitation ("CDCR") Secretary J. Beard; and CDCR Director M. Cate.

The Court notes that Plaintiff originally filed the same claims against most of the same Defendants in another civil rights action, Case No. C 12-6537 YGR (PR) (hereinafter "*Dillingham I*"), in which the Second Amended Complaint ("SAC") was the operative complaint.  *Compare* Dkt. 1 *with* Dkt. 16 in Case No. C 12-6537 YGR (PR).  However, in *Dillingham I*, the Court granted the Defendants' motion for summary judgment based on the failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to most of the claims in the SAC (i.e., all claims except for the retaliation claim against Defendants Brunscher and Scruggs, and SVSP Officer S. Lawson).  *See* Dkt. 97 in Case No. C 12-6537 YGR (PR) at 3-14.  The aforementioned claims were dismissed without prejudice to refiling after exhausting California's prison administrative process.  *See id.* (citing *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002)).  The Court granted the Defendants' motion for

summary judgment as to Plaintiff's remaining retaliation claim and issued judgment. *Id.* at 14-24; *see also* Dkt. 98 in Case No. C 12-6537 YGR (PR). Plaintiff appealed the judgment (entered on September 8, 2015), but he voluntarily dismissed his appeal. Dkt. 101 in Case No. C 12-6537 YGR (PR).

In the instant action, Plaintiff has submitted a new complaint, in which he has refiled most of the claims from his previous action, *Dillingham I*, and indicated that he has since exhausted his claims to the "highest level of appeal available to [him]." *See* Dkt. 1 at 1-2.[1]

Both Plaintiff and Defendants move for summary judgment (and partial summary judgment) or cross-summary judgment under Federal Rule of Civil Procedure 56. Dkts. 20, 45. In Plaintiff's motion, he moves for "partial" summary judgment on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law. Dkt. 20. Meanwhile, in Defendants' cross-motion for summary judgment, Defendants argue that they are entitled to summary judgment for the following reasons: (1) Plaintiff did not comply with the requirement to exhaust available administrative remedies before bringing *Dillingham I* and he still has not complied with this requirement because he never exhausted a grievance related to his claims through all three levels of administrative review, Dkt. 45 at 6; and (2) Plaintiff is collaterally estopped from re-litigating his claim that administrative remedies were unavailable before the Court's September 8, 2015 ruling in *Dillingham I* that such a claim that "administrative remedies were unavailable was 'conclusory at best' and 'the evidence produced by Defendants is sufficient to carry their ultimate burden of proof to show that [Dillingham's deliberate indifference, access-to-court, and conspiracy claims] are unexhausted, even in light of [Dillingham's] verified factual allegations,'" *id.* (quoting Dkt 97 in Case No. C 12-6537 YGR (PR) at 13). Plaintiff has filed an opposition to the motion, and Defendants have filed their reply. Dkts. 54, 55, 59.

Also before the Court are the following motions: (1) Plaintiff's Motion to Stay Case

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

2

Pending Court Ruling on Emergency Request of Appointment of Counsel (dkt. 28);

(2) Defendants' Motion for Protective Order Staying Discovery (dkt. 69); (3) Plaintiff's Motion

for Appointment of an Expert Witness (dkt. 70); and (4) Plaintiff's Motion to Compel Discovery

Disclosure of Records of Prior Complaints (dkt. 72).

For the reasons outlined below, the Court GRANTS Defendants' cross-motion for

summary judgment based on Plaintiff's failure to exhaust administrative remedies as to all the

claims in his new complaint, DENIES Plaintiff's motion for partial summary judgment, and

DENIES as moot all remaining pending motions.

## II.     MOTIONS FOR SUMMARY JUDGMENT

### A.     Background

#### 1.  Summary of Claims

The following summary of Plaintiff's claims is taken from the Court's June 2, 2017 Order

of Partial Dismissal and Service, which states as follows:

> In the instant complaint, Plaintiff alleges multiple incidents
> involving various SVSP prison officials. Specifically, the Court
> finds that Plaintiff has alleged the following cognizable claims
> against the following named Defendants:
>
> (1)     an Eighth Amendment claim that Defendants Scruggs and
> Brunscher acted with deliberate indifference to the threat of serious
> harm or injury to Plaintiff by other prisoners resulting from these
> Defendants spreading certain rumors that Plaintiff was a "snitch,
> informant, rat, cop" (Claim 1);
>
> (2)     claim for emotional distress and mental torture against
> Defendants Scruggs, Brunscher and Mojica for their acts of
> "malicouslly [sic] caus[]ing the spread of identifying [Plaintiff] as a
> 'snitch,' 'informant' amongst dangerous convicts" prior to the
> January 18, 2013 incident involving an assault and battery with a
> weapon by his cell mate inmate Lozano, who stated to Plaintiff,
> "This ass beating you['re] getting is for being a snitch rat." (Claims
> 3 and 8);
>
> (3)     a claim of conspiracy in violation of 42 U.S.C. § 1995(3),
> against Defendants Scruggs and Brunscher (Claim 4); and
>
> (4)     a claim of a denial of Plaintiff's right to access to the courts
> against Defendant Mojica (Claims 5, 6 and 7).
>
> Dkt. 1 at 22-25.

Dkt. 13 at 2-3.  The Court dismissed without prejudice Plaintiff's supervisory liability claims against Defendants Hedgpeth, Cate and Beard.  *Id.* at 3.  The Court also pointed out that the complaint included allegations against Defendants Scruggs and Brunscher for acting in retaliation for Plaintiff filing grievances (Claim 2).  *Id.* (citing Dkt. 1 at 23).  However, the Court noted that those allegations "repeat the claim Plaintiff made in his previous action, Case No. C 12-6537 YGR (PR) [*Dillingham I*], in which summary judgment was granted in favor of Defendants (as to this retaliation claim) and against Plaintiff."  *Id.*  Therefore, the Court dismissed as frivolous the retaliation claim against Defendants Scruggs and Brunscher it was duplicative of the claim Plaintiff already litigated and lost.  *Id.* (citing *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (duplicative or repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915 as malicious)).

### 2.  Background Relating to Exhaustion

As exhibits to Defendants' attorney Deputy Attorney General Elliot T. Seals's declaration, Defendants have once again submitted as supporting evidence the same prison records the presented in *Dillingham I*, which they argue prove that he never submitted grievances through the CDCR's administrative grievance process concerning the aforementioned cognizable claims, i.e., all claims except for Claim 2 (the retaliation claim against Defendants Scruggs and Brunscher).  Dkt. 45 at 7-10.  Defendants also claims that "[a]fter September 8, 2015, when the court dismissed [Plaintiff's] previous lawsuit for failure to exhaust, [he] still failed to exhaust available remedies.  [Plaintiff] did not submit any new grievances to the third level related to his claims against Brunscher, Scruggs, or Mojica.  *Id.* at 13 (citing Voong Decl., Exs. A-C).

Defendants seem to again argue that no fair reading of Plaintiff's grievances could conclude that he complained that any Defendants put him in harm's way by labeling him a snitch, caused him to be threatened or attacked by other inmates, conspired to violate his constitutional rights, violated his right to court access, or mentally tortured him in violation of the Eighth Amendment.  *See id.*; *see also* Seals Decl., Ex. 7 (Medina Decl., Exs. B, D, E.)

Thus, Defendants raise the same argument as in *Dillingham I*—that Plaintiff failed to

4

exhaust administrative remedies for his deliberate-indifference claim, court access claim, conspiracy claim, and Eighth Amendment claim for mental torture. Accordingly, they argue that the Court should grant summary judgment in Defendants' favor on each of those claims.

Before turning to the facts relating to exhaustion in the present case, the Court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### a. Legal Framework Relating to Exhaustion

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, the PLRA requires compliance with prison grievance procedures to exhaust properly. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).[2]

_____

[2] The regulations pertaining to the inmate appeal process were amended effective January 28, 2011. As explained below, Plaintiff's grievances were submitted *after* January 28, 2011; therefore, the amended regulations were in effect and govern his grievances.

To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 ("appeal" or "grievance") describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing. *Id.* § 3084.2(a)-(c). The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3). Inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed." *Id.* § 3084.8(b)(1).

The CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee ("Director's Level"). *Id.* §§ 3084.7.[3] A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

### b. Plaintiff's Relevant Appeal History

The following summary relating to Plaintiff's relevant appeal history is taken from the Court's September 8, 2015 Order Granting Defendants' Motion for Summary Judgment in *Dillingham I*:

> From 2000 to the present, Plaintiff has administratively exhausted "more than 30 inmate grievances" to the Director's Level. Briggs Decl. ¶ 7, Ex. A. Among those grievances exhausted through the

---

[3] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal. *See* Cal. Code Regs. tit. 15, § 3084.7.

Director's level, two were submitted during the relevant period of 2011 through 2012—SVSP-12-02488 and SVSP-11-01435. Briggs Decl. ¶ 8, Ex. A; Medina Decl. ¶ 15, Exs. B, C. The record shows that SVSP-12-02488 concerned Plaintiff's complaint about the outcome of the hearing on an unrelated May 26, 2012 RVR. Medina Decl., Ex. C. However, the other exhausted grievance, SVSP-11-01435, concerned some of the claims in the present action, as further explained below. Medina Decl. ¶¶ 17, 21, Ex. B.

In addition, Plaintiff submitted, albeit only to the lower levels of review, two other grievances concerning the issues in the present action and related to his job in the bakery in 2011 and 2012—SVSP-L-11-379 and SVSP-L-11-669. Medina Decl. ¶¶ 17-20, Exs. D, E.

Defendants have supplied copies of the relevant grievances, to which the Court will cite. Plaintiff does not dispute that these grievances are relevant to the present case. Therefore, the Court will limit its analysis to the three relevant grievances, which are summarized below:

**1) SVSP-L-11-379[4]**

On February 9, 2011, Plaintiff submitted SVSP-L-11-379 to the first level of review. Medina Decl. ¶ 18, Ex. D. In SVSP-L-11-379, Plaintiff complained about a chrono that Defendant Scruggs prepared on February 4, 2011, and in which she was critical of Plaintiff's job performance on January 27, 2011, i.e., that he was "working at an extremely slow pace in the Central Kitchen Bakery, which was impeding bakery production." *Id.* SVSP-L-11-379 asserted that another inmate manipulated Defendant Scruggs into writing the chrono. *Id.* Plaintiff claimed the chrono was false and requested that Defendant Scruggs withdraw it. *Id.* SVSP-L-11-379 did not complain about the actions of anyone other than Defendant Scruggs. *Id.*

The record shows Plaintiff pursued SVSP-L-11-379 through the first level of review, where it was denied. *Id.* The prison does not have any record indicating that Plaintiff pursued SVSP-L-11-379 to the higher levels of review.

**2) SVSP-L-11-669**

On March 17, 2011, Plaintiff submitted SVSP-L-11-669 to the first level of review. Medina Decl. ¶ 19, Ex. E. SVSP-L-11-669 only concerned Defendant Scruggs and a February 4, 2011 chrono she issued to Plaintiff for theft of food. Medina Decl., Ex. E, Dkt. 70-5 at 2-8. Specifically, Plaintiff complained that Defendant Scruggs attended a meeting with Supervising Correctional Cook A. Fagan

---

[4] The Court notes that the only copy of SVSP-L-11-379 in the record is missing the page containing the "extra space for [Plaintiff] to continue describing the issue that he was grieving and the relief he was requesting." Medina Decl. ¶ 18. However, there is a summary of the issue he was grieving and relief requested outlined in the first-level response to SVSP-L-11-379, *id.*, and Plaintiff does not dispute that the summary is a correct interpretation of this information from SVSP-L-11-379.

and Plaintiff, during which Defendant Scruggs allegedly stated as follows: "The 2-4-2011 CDCR 128-A Chrono Information is a[n] error on my part & I recant." Medina Decl., Ex. E, Dkt. 70-5 at 2. Plaintiff further claimed that Defendant Scruggs added: "I will write up a new chrono which will clear [Plaintiff]'s name regarding the 128-A." *Id.* at 4. However, Plaintiff complained that despite the aforementioned statements by Defendant Scruggs at that meeting, she later refused to retract the previous chrono or prepare a new laudatory chrono for Plaintiff (as a compensation). *Id.*

Plaintiff pursued SVSP-L-11-669 through the first two levels of review. It was partially granted at the second level of review on May 9, 2011. However, the "inquiry [was] not yet complete." *Id.* at 8. The record shows that the second-level response indicates that a "confidential inquiry was conducted," although the summary of the appeal inquiry was incomplete because it seems to end mid-sentence. *Id.* Nevertheless, Plaintiff appealed it to the Director's level review on June 7, 2011. Medina Decl. ¶ 19, Ex. E; Mojica Decl. ¶ 10, Ex. D; Decl. Briggs ¶ 9, Ex. B; Dkt. 16 ¶ 14. On September 7, 2011, the third level reviewer informed Plaintiff that it had returned the grievance to the SVSP appeal coordinators because aforementioned second-level response was inadequate. Medina Decl., Ex. E, Dkt. 70-5 at 9-11. Directions from the third level required the creation of an amended second-level response and that Plaintiff be provided the opportunity to review the amended response and appeal the decision to the third level again should he so choose. *Id.*; Decl. Briggs ¶ 9, Ex. B. On October 25, 2011, an amended second-level response was completed. Medina Decl. ¶ 20, Ex. E, Dkt. 70-5 at 12-13; Mojica Decl. ¶ 11. The reviewer explained that the appeal was partially granted to the extent that an "inquiry" was conducted, and the "inquiry" was complete upon finding that "[s]taff did not violate CDCR policy." Medina Decl., Ex. E, Dkt. 70-5 at 12. The amended second-level response explicitly advised Plaintiff that to exhaust all remedies, he would need to submit the grievance to the third-level review. *Id.* However, the record shows that Plaintiff did not pursue SVSP-L-11-669 to the final level of review.

### 3) SVSP-L-11-1435

On June 16, 2011, Plaintiff submitted SVSP-L-11-1435 to the first level of review. Medina Decl. ¶ 21, Ex. B. Plaintiff pursued this grievance through all three levels of review and completely exhausted available administrative remedies for it. *Id.* SVSP-L-11-1435 asserted that Defendant Hedgpeth ordered Defendants Lawson, Scruggs, and Brunscher to "stop illegally preventing [Plaintiff] from working in the bakery," and complained that Defendants Lawson, Scruggs, and Brunscher had continued to prevent Plaintiff from working despite the Defendant Hedgpeth's order. *Id.*, Ex. 70-2 at 2. The grievance further asserted that his bakery supervisors, Defendants Brunscher and Scruggs, filed false documents about Plaintiff causing him to lose his job and that they did this in retaliation for grievances he filed against them. *Id.* at 4. Although this grievance referenced Defendant Hedgpeth, it did not alert the prison to any problem with his conduct. *Id.* To the contrary, as mentioned above, it asserted that Defendant Hedgpeth attempted to

help Plaintiff by ordering others to allow him to work.  *Id.*

On June 24, 2011, SVSP-L-11-1435 was initially screened out at the first level of review because it was not submitted on the "departmentally approved appeal forms" and did not include the required attachments to support his grievance.  *Id.* at 12.  On July 22, 2011, Plaintiff re-submitted SVSP-L-11-1435 on the correct form along with the required attachments.  *Id.* at 2-11.

On August 23, 2011, SVSP-L-11-1435 was partially granted at the second level of review in that an "inquiry into [his] allegation ha[d] been conducted."  *Id.* at 13.  The summary for appeal inquiry stated:

> You were interviewed on August 17, 2011 by R. Rodriguez you stated you worked in the bakery for about 4 years and [you were] the senior baker with a pay rate of .32 per hour.  You claim staff singled you out and were issuing unjustified 128s and 128B1s.  You said the write ups were for Staff Manipulation, Over Familiarity and slowing down production.  You added by not providing you with the 101s from the request date July 2010-March 2011, you were deprived of your Due Process.  You admitted that you failed to follow a baking procedure by not placing a sheet pan on the top rack when baking the cakes causing metal shaving[s] to fall in the cakes.  You felt that this write up was unjust because your supervisors were watching you and they should have corrected you at the time.  There were no witnesses interviewed.  The following information was reviewed as a result of your allegations of staff misconduct.  On October 21, 2010, January 27, 2011 and February 3, 2011 you received 128-As for poor job performance.  On February 22, 2011 you received a 128-B for attempting to manipulate staff then on April 26, 2011 you received a 128-B for program failure at which time you were placed on S time.  This reviewer found no violation of CDCR policies by staff.

*Id.* at 13.  Plaintiff then appeal SVSP-L-11-1435 to the Director's level, where it was initially rejected on October 4, 2011 and January 27, 2012 for being incomplete and for having "excessive attachments," respectively.  *Id.* at 15-16.

On May 18, 2012, SVSP-L-11-1435 was denied at the Director's level and "no relief" was provided at this final level of review.  *Id.* at 17.  The third-level reviewer "determined that [Plaintiff's] allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed" at the second level of review.  *Id.*  The third-level response also indicated that "[n]o changes or modifications are required by the Institution," and that "[t]his decision exhausts the administrative remedies available to [Plaintiff] within CDCR."  *Id.* at 18.

9

Dkt. 97 at 5-9 (footnote renumbered).

In addition to the 602 appeals above, Plaintiff filed two other 602 appeals in 2013 that relate to the assault by his former cellmate, inmate Lozano: log numbers SVSP-L-13-05800 and SVSP-L-13-05799. Voong Decl., Exs. B, C. As exhibits attached to the instant motion, Defendants have supplied copies of the aforementioned grievances, to which the Court will cite. Plaintiff does not dispute that these grievances are relevant to the present case. Therefore, the Court also includes in its analysis these two other relevant grievances, which are summarized below:

### 4) SVSP-L-13-05800[5]

On January 16, 2013, Plaintiff submitted SVSP-L-13-05800 to the first level of review. Voong Decl. ¶ 10, Ex. B, Dkt. 48-1 at 8-11. In SVSP-L-13-05800, Plaintiff complained that Correctional Officers T. Johnson and D. Moon ignored his request in early January 2018 to be moved to another cell and this caused him to be attacked by inmate Lozano on January 18, 2013. *See id.* Plaintiff asserted that inmate Lozano attacked him because of the following reasons: (1) inmate Lozano is a "gangster, that has shown his malicious, violent, and general ill temperedness, rambunctious demeanor at every turn"; (2) Plaintiff is old and has "mental health" issues; (3) Plaintiff is a "colored man" and inmate Lozano is a "Mexican"; and (4) Plaintiff told inmate Lozano and that he "did not want [inmate Lozano] making w[i]ne, doing drug[s] while in the cell." *Id.* SVSP-L-13-05800 did not complain about the actions of anyone other than Correctional Officers Moon and Johnson.[6] *Id.*

The record shows Plaintiff pursued SVSP-L-13-05800 through the first and second levels of review, where it was bypassed at the first level and granted in part in the second level. *Id.* According to the second level response, his appeal was "PARTIALLY GRANTED in that the Appeal inquiry is complete [and] has been reviewed and all issues were adequately addressed."

---

[5] The Court has chosen to continue the numbering of the relevant appeals based on the fact that this is the fourth after the three 602 appeals listed above (from *Dillingham I*).

[6] The Court notes that Plaintiff filed a separate section 1983 case against Correctional Officers Moon and Johnson, in which summary judgment has been granted in favor of all Defendants in that action. *See* Dkts. 92 and 98 in Case No. C 13-5777 YGR (PR).

*Id.* at 12.  Furthermore, the response concluded that prison staff did not violate CDCR policy with respect to one or more issues appealed.  *Id.*  Plaintiff then pursued SVSP-L-13-05800 to the final level of review.  *Id.*  On February 5, 2014, the Office of Appeals ("OOA") initially rejected the appeal because he "ha[d] not submit[ted] [his] appeal printed legibly in ink or typed on the lines provided on the appeal forms in no smaller than a 12-point font or failed to submit an original." *Id.* at 23.  Plaintiff was instructed that if he wished to resubmit it after taking "corrective action" that he would need to "resubmit the appeal within the timeframes specified in [the California Code of Regulations, Title 15, Section] CCR 3084.6(a) and 3084.8(b)."  *Id.* at 23.   Plaintiff returned the appeal to the OOA, but the record shows that it did not arrive in the OOA until March 12, 2014, which exceed[ed] time constraints allowed by 5 days."  *Id.* at 7.  Thus, the appeal was cancelled on July 25, 2014.  *Id.*

On August 24, 2014, Plaintiff appealed the cancellation of SVSP-L-13-05800, and his appeal was given log number OOA-13-08881.  Voong Decl. ¶ 10, Ex. C, Dkt. 48-1 at 34-35.  On November 24, 2014, OOA-13-08881 was denied.  *Id.* at 32-33.  The denial indicates that the "decision exhausts the administrative remedy available to the appellant within CDCR."  *Id.* at 33.

### 5) SVSP-L-13-05799

On January 23, 2013, Plaintiff filed a 602 appeal alleging that Sergeant E. Howard made Plaintiff sign a false compatibility chrono, stating that he was involved in a fight after he claimed he was assaulted.  Voong Decl. ¶ 10, Ex. D, Dkt. 48-1 at 71-78.  SVSP-L-13-05799 did not complain about the actions of anyone other than Sergeant Howard.[7]  *Id.*

The record shows Plaintiff pursued SVSP-L-13-05799 through the first and second levels of review, where it was bypassed at the first level and granted in part in the second level.  *Id.* According to the second level response, his appeal was "PARTIALLY GRANTED in that the Appeal inquiry is complete [and] has been reviewed and all issues were adequately addressed." *Id.* at 79.  Furthermore, the response concluded that prison staff did not violate CDCR policy with

---

[7] The Court notes that Plaintiff had also named Sergeant Howard as a defendant when he filed the separate section 1983 case, in which summary judgment has been granted in favor of all Defendants in that action.  *See* Dkts. 92 and 98 in Case No. C 13-5777 YGR (PR).

respect to one or more issues appealed. *Id.* Plaintiff then pursued SVSP-L-13-05799 to the final level of review. *Id.* On February 10, 2014, the OOA initially rejected the appeal because he "ha[d]not submit[ted] [his] appeal printed legibly in ink or typed on the lines provided on the appeal forms in no smaller than a 12-point font or failed to submit an original." *Id.* at 86. Plaintiff was instructed that if he wished to resubmit it after taking "corrective action" that he would need to "resubmit the appeal within the timeframes specified in [the California Code of Regulations, Title 15, Section] CCR 3084.6(a) and 3084.8(b)." *Id.* Thereafter, Plaintiff returned the appeal to the OOA, but the record shows that Plaintiff was directed to submit a second version due to a back-log from a "building catastrophe at the [OOA]." *Id.* at 87. However, after Plaintiff submitted the second version of the returned appeal, it was rejected on September 17, 2014 and he was instructed to "remove the white photocopy version of SVSP-L-13-05799 . . . ." *Id.* Plaintiff did so and resubmitted it, but the record shows that it did not arrive in the OOA until "November 6, 2014, more than 30 days from the [September 17, 2014] rejection letter." *Id.* at 65, 69. Thus, the appeal was cancelled on March 3, 2015. *Id.* at 69.

On March 26, 2015, Plaintiff appealed the cancellation of SVSP-L-13-05799, and his appeal was given log number OOA-13-09012. Voong Decl. ¶ 10, Ex. D, Dkt. 48-1 at 65-66. On June 15, 2015, OOA-13-09012 was denied. *Id.* The denial indicates that the "decision exhausts the administrative remedy available to the appellant within CDCR." *Id.* at 66.

Finally, Defendants have also provided evidence that Plaintiff submitted two other 602 appeals after the Court's September 8, 2015 Order Granting Defendants' Motion for Summary Judgment was issued in *Dillingham I*. *See* Voong Decl. ¶ 11, Exs. C, D. Specifically, the record shows that Plaintiff submitted 602 appeal log numbers SATF-16-02515 and SATF-17-00107 to the third level. *See id.* SATF-16-02515 received a final decision and was exhausted but SATF-17-00107 was screened-out for failing to comply with procedural requirements. *Id.* However, the record shows that these two aforementioned 602 appeals do not relate to the claims in this present action. *Id.* Instead, they relate to complaints about Plaintiff's housing conditions at the California Substance Abuse and Treatment Facility in 2016 and 2017. *Id.*

### B.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When the parties file cross-motions for summary judgment, the court must consider all the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact exists precluding summary judgment for either party.  *The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The ultimate burden of proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of the motion for summary judgment, Defendants have presented declarations from OOA Chief M. Voong as well as their attorney, Deputy Attorney General Seals, who has attached previously-filed declarations (filed in support of the motion for summary judgment in *Dillingham I*) from OOA Acting Chief R. Briggs and Defendants Medina and Mojica. Dkts. 48, 49. As noted, Plaintiff has filed oppositions to Defendants' cross-motion for summary judgment (dkts. 54, 55); however, the oppositions are not verified and will not be considered because they were not signed under "penalty of perjury." Dkt. 54 at 4; Dkt. 55 at 7. In essence, Plaintiff's oppositions raise similar arguments and issues to those in his complaint. *Compare* Dkts. 54, 55 *with* Dkt. 1. Because the complaint is verified, dkt. 1 at 26, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## C. Analysis of Defendants' Cross-Motion for Summary Judgment

### 1. Defendants' Initial Burden of Proving Unexhaustion

As explained above, Defendants contend that Plaintiff did not exhaust his administrative remedies as to all claims in the complaint in the present action. Dkt. 45 at 5, 11-14. In its previous order in *Dillingham I*, the Court determined that Defendants had met their initial burden as the moving party by setting forth evidence to demonstrate Plaintiff's non-exhaustion as to all claims in this action (which are similar to the claims in *Dillingham I* except the retaliation claim), specifically by conducting a search of the CDCR's records and finding no grievances submitted to the Director's level by Plaintiff concerning the claims at issue, stating as follows:

> . . . Defendants acknowledge that Plaintiff filed one relevant grievance to the retaliation claim against Defendants Brunscher, Scruggs and Lawson, but contend that Plaintiff did not exhaust his administrative remedies as to all other claims in the SAC. Dkt. 56 at 29. The undisputed evidence shows that SVSP-L-11-1435 involved the aforementioned retaliation claim and that Plaintiff pursued this grievance to the highest level of appeal. The undisputed evidence also reveals that Plaintiff filed two other grievances, also dealing with the retaliation claim (but mostly against Defendant Scuggs); however, SVSP-L-11-379 and SVSP-L-11-669 were not pursued to the highest level of appeal. Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies as to all claims except for the

aforementioned retaliation claim. *Id.*

Defendants have met their initial burden as the moving party by setting forth evidence to demonstrate Plaintiff's non-exhaustion as to all claims except for the aforementioned retaliation claim, specifically by conducting a search of the CDCR's records and finding no grievances submitted to the Director's level by Plaintiff concerning the claims at issue. *See Paramo*, 775 F.3d at 1191. Defendants cite the declarations of Acting Chief Briggs of the Office of Appeals and Appeals Coordinator Medina who have reviewed Plaintiff's grievances and concluded that: (1) Plaintiff only submitted two grievances during the 2011-2012 time period at issue that were pursued to the Director's level, only one of which related to the aforementioned retaliation claim; and (2) he did not submit any grievances concerning his deliberate indifference claim, court access claim, conspiracy claim, and Eighth Amendment claim for mental torture against Defendants that were accepted at any level of review. Briggs Decl. ¶ 8; Medina Decl. ¶¶ 17-24. Specifically, Appeals Coordinator Medina, who is responsible for "receiving, logging, routing, and monitoring the disposition of inmate grievances" at SVSP, attests that a search of the database containing records of all inmate appeals filed by Plaintiff at SVSP was conducted and that the search produced a grievance activity report showing proof that Plaintiff submitted a total of eight inmate appeals during the 2011-2012 time period. Medina Decl. ¶ 14. Appeals Coordinator Medina reviewed the grievance activity report and reviewed the grievances Plaintiff submitted from 2011 through 2012 states as follows relating to eight inmate appeals that were accepted for review:

> I am informed by the Attorney General's Office that Dillingham's lawsuit concern work related incidents that occurred in 2011 and 2012 between Dillingham and his bakery supervisors. Based on my review of the IATS printout and my review of the grievances Dillingham submitted in 2011 and 2012, I have confirmed that Dillingham submitted only three grievances concerning those alleged events, and he pursued one of them through the final level of review.

*Id.* ¶ 17. The three relevant grievances, which have been described in detail above as only pertaining to the aforementioned retaliation claim, are: SVSP-L-11-379, SVSP-L-11-669, and SVSP-11-01435. *Id.* ¶¶ 18-21.

Dkt. 97 in Case No. C 12-6537 YGR (PR) at 10-11.

Furthermore, the record shows that in 2013, Plaintiff submitted two grievances, SVSP-L-13-05800 and SVSP-L-13-05799, related to his claim that he was assaulted by inmate Lozano on January 18, 2013. *See* Voong Decl., Exs. B, C. However, neither of these grievances alleged any wrongdoing by the Defendants in the present action—Defendants Brunscher, Mojica, or Scruggs.

To the contrary, as mentioned above, they alleged that non-Defendant correctional officers were deliberately indifferent to him being assaulted and that a non-Defendant sergeant required Plaintiff to sign a chrono related to the altercation with inmate Lozano. *See id.*

Finally, after the Court's September 8, 2015 Order granting summary judgment for failure to exhaust in *Dillingham I*, the record shows that Plaintiff did not make any further efforts to exhaust available administrative remedies by submitting any new grievances related to his claims against Defendants Brunscher, Scruggs, or Mojica. *See* Voong Decl., Exs. A-C. Instead, the record shows that the 602 appeals Plaintiff submitted, SATF-16-02515 and SATF-17-00107, involved unrelated complaints about his housing conditions at the California Substance Abuse and Treatment Facility in 2016 and 2017. *Id.*

In sum, Defendants have adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust as to all claims in the instant complaint.

### 2. Plaintiff's Burden of Proving Unavailability of Administrative Remedies

As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

In its previous order in *Dillingham I*, the Court determined the conclusory evidence presented by Plaintiff was insufficient to defeat the Defendants' motion for summary judgment as to the unexhausted claims, stating as follows:

> As explained above, Defendants have presented evidence that Plaintiff's prison records prove that he did not submit grievances through CDCR's administrative grievance process concerning the claims in his complaint. In response, Plaintiff has filed a verified opposition to Defendants' motion, Plaintiff has filed a verified

opposition as well as various verified declaration in opposition to Defendants' declarations, which are excessively lengthy (with multiple attachments) and difficult to decipher, but they seem to indicate that he concedes that the three aforementioned grievances are the ones relevant to the present case. Dkts. 91 at 5-6, 13-15; 93 at 3. The Court notes that in his verified SAC, Plaintiff claims that he filed one other grievance against Defendants Brunscher and Scruggs on March 27, 2011, which is a different filing date than the three aforementioned grievances. Dkt. 16 at 12, ¶ 24. Attached to the SAC is Plaintiff's March 27, 2011 grievance on the original appeal form, in which he complains that Defendants Brunscher and Scruggs filed "false[,] erroneous[,] prejudicial" chronos and RVRs in retaliation for his filing grievances against them. *Id.* at 71-74. However, there are no markings on that form indicating that this grievance was received or processed through the highest level of appeal. *See id.* Plaintiff claims that he submitted this grievance for review; however, Defendant Mojica (an appeals coordinator) "ma[d]e unavailable administrative redress of this grievance with [Defendant] Mojica's staff . . . ." *Id.* ¶ 24. He adds that the unanswered grievance was not returned to him. *Id.* Thus, Plaintiff claims that he was "unable to complete final exhaustion" of this grievance. *Id.* Even though it seems that Plaintiff's March 27, 2011 was unanswered, the Court finds that the previously-mentioned three grievances, which *were* accepted for review—i.e., SVSP-L-11-1435 was exhausted through the *Director's* level—are sufficient evidence showing that Plaintiff has exhausted administrative remedies as to his retaliation claim against Defendants Brunscher, Scruggs and Lawson. Accordingly, Defendants have not met their ultimate burden to show that Plaintiff did not exhaust his available administrative remedies as to the aforementioned retaliation claim.

However, as to the other claims in his SAC, it seems that Plaintiff generally argues that the administrative remedies were made "unavailable" to him; however, his arguments in support of such a claim are not clearly outlined in his opposition. Instead, they are separately argued in a conclusory fashion in his declarations in opposition to Defendants' declarations. *See generally* Dkts. 91, 93. Although Plaintiff is not required to allege that he resorted to extraordinary measures in order to exhaust his administrative remedies, conclusory allegations that the administrative remedies process is inadequate are insufficient to defeat dismissal for failure to exhaust. *See White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Furthermore, the record contradicts Plaintiff's arguments because, as mentioned above, it shows that Plaintiff was able to pursue *two grievances* to the Director's level at the time period during which his administrative remedies were allegedly not made available to him—SVSP-12-02488 and SVSP-11-01435. Briggs Decl. ¶ 8, Ex. A; Medina Decl. ¶ 15, Exs. A-C. Plaintiff does not support his allegation that the administrative remedies were made unavailable to him; therefore, they are conclusory at best. Further, the Court is not required to scour the record to determine which particular argument and/or exhibit pertains to Plaintiff's conclusory claim that his administrative remedies were made unavailable to him. Thus, the aforementioned conclusory evidence presented by Plaintiff is insufficient to defeat Defendants' motion for summary judgment as to the other claims in his SAC. Furthermore, the fact

that Plaintiff was able to file eight inmate appeals between 2011 and 2012 and pursue two grievances to the Director's level suggests that he had adequate access to the administrative appeals process. *See* Medina Decl. ¶ 14; Briggs Decl. ¶ 8. Meanwhile, the evidence produced by Defendants *is sufficient* to carry their ultimate burden of proof to show that the other claims are unexhausted, even in light of Plaintiff's verified factual allegations.

Dkt. 97 at 12-13 (emphasis in original).

In the present case, Plaintiff seems to make a conclusory claim that after the Court's September 8, 2015 Order in *Dillingham I*, he exhausted all available administrative remedies as to the claims in his complaint. *See* Dkt. 1 at 2. As explained above, such claim is not supported by the evidence. Plaintiff also appears to argue that he was excused from exhausting his claims through the third level of review because he was not allowed to re-submit his March 27, 2011 602 appeal. *See* Dkt. 1, Exs. O-S. However, the evidence attached to Plaintiff's complaint does not show that he ever actually re-submitted this appeal. *Id.* Instead, his exhibits appear to show that Plaintiff submitted multiple requests inquiring about the status of his March 27, 2011 602 appeal using a CDCR Form 22 or "Inmate/Parolee Request for Interview, Item of Service," which is not the same as re-submitting the actual 602 appeal form. *See id.* As explained above, there is no evidence that Plaintiff submitted or re-submitted the March 27, 2011 602 appeal. Defendants have provided Defendant Mojica's previous declaration (from *Dillingham I*) showing that no such 602 appeal was received. *See* Dkt. 1, Ex. D, Seals Decl., Ex. 7 (Mojica Decl.) at Ex. A. Plaintiff has not presented evidence that he was prevented from re-submitting the March 27, 2011 602 appeal. Instead, the evidence shows that Plaintiff was well-versed on how to submit grievances because he submitted multiple grievances during this period, some of which were exhausted through all three levels of review. *See* Seals Decl., Ex. 5 (Briggs Decl.) at Ex. A; Voong Decl., Ex. A. Moreover, the record also shows that Plaintiff never submitted any grievances complaining that Defendant Mojica failed to respond to the March 27, 2011 602 appeal or claiming that Defendant Mojica intentionally prevented this grievance's submission. Plaintiff has failed to present evidence that he actually submitted the March 27, 2011 602 appeal and thus, it follows that this grievance was not exhausted through the third level.

Furthermore, Defendants argue that Plaintiff's claim that administrative remedies were

unavailable (purportedly because Defendant Mojica failed to respond to the March 27, 2011 602 appeal) is not credible, and they add that because it was previously addressed by this Court such an argument is now collaterally estopped. This Court agrees. Re-litigation of an issue decided in a prior proceeding is prohibited by the doctrine of collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 96, 105 (1980) (collateral estoppel applies to section 1983 suits). Collateral estoppel, also known as issue preclusion, prohibits the re-litigation of issues decided in a prior proceeding when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (citation and quotation marks omitted). All elements of collateral estoppel are present here, as Defendants have shown. The present issue—involving Plaintiff's position that exhaustion was unavailable—is identical to the one decided in the prior proceeding[8]; exhaustion was actually litigated and actually decided in the prior action (it was the central issue); there was a full and fair opportunity to litigate the issue in the prior proceeding (both parties fully briefed the issue); and the litigation of the exhaustion issue was necessary to support a valid and final judgment on the merits (the decision in the prior proceeding was the reason summary judgment was granted and the claims at issue were dismissed). The Court also notes that the party against whom preclusion is sought (Plaintiff) is same in both actions. This Court's prior determination of the issue of exhaustion applies here and bars re-litigation.

Accordingly, Defendants are entitled to summary judgment based on the failure to exhaust administrative remedies, and their motion is GRANTED as to all the claims in his complaint. Dkt. 45.

**D.      Analysis of Plaintiff's Motion for Partial Summary Judgment**

In resolving Defendants' cross-motion for summary judgment above, the Court has also

---

[8] In *Dillingham I*, this Court noted that Plaintiff's had initial filed an appeal, but he voluntarily dismissed it. Dkt. 101 in Case No. C 12-6537 YGR (PR). As such, the Court's previous rulings in *Dillingham I* still stand.

reviewed the evidence and arguments in Plaintiff's pending motion for partial summary judgment. The evidence and argument in Plaintiff's motion do not defeat Defendants' cross-motion. Having determined that Defendants are entitled to judgment as a matter of law due to Plaintiff's failure to exhaust administrative remedies, Plaintiff's motion for partial summary judgment is necessarily DENIED. Dkt. 20.

## III. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. The Court GRANTS Defendants' cross-motion for summary judgment based on the failure to exhaust administrative remedies as to all claims in the complaint. Dkt. 45. The aforementioned claims are DISMISSED without prejudice to refiling after exhausting California's prison administrative process. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

2. The Court DENIES Plaintiff's motion for partial summary judgment. Dkt. 20.

3. All remaining motions are DENIED as moot, including: (1) Plaintiff's Motion to Stay Case Pending Court Ruling on Emergency Request of Appointment of Counsel (dkt. 28); (2) Defendants' Motion for Protective Order Staying Discovery (dkt. 69); (3) Plaintiff's Motion for Appointment of an Expert Witness (dkt. 70); and (4) Plaintiff's Motion to Compel Discovery Disclosure of Records of Prior Complaints (dkt. 72).

4. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

5. This Order terminates Docket Nos. 20, 28, 45, 69, 70, and 72.

IT IS SO ORDERED.

Dated: June 12, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge